**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                      No. CR 11-2158 JB

DANIEL MANUEL RODRIGUEZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Supplement to Motion to Suppress for Purposes of Preserving Issue, filed January 9, 2012 (Doc. 43)("Supplement"). The Court held a sentencing hearing on July 6, 2012. The primary issues are: (i) whether Defendant Daniel Manuel Rodriguez' Defendant's Motion and Memorandum to Suppress Evidence, filed October 3, 2011 (Doc. 24)("Suppression Motion") sufficiently put the Court on notice of his argument that the Albuquerque Police Department officers' questioning him outside of the convenience store at which he worked exceeded the investigatory detention's limited scope and was rather a de facto arrest under the Fourth Amendment to the United States Constitution, so that the issue was timely raised; (ii) whether the discussion of Rodriguez' argument at the suppression hearing that the Court held on November, 16, 2011 and the Court's analysis of the argument in its Memorandum Opinion and Order regarding the suppression hearing preserved the issue; and (iii) whether, because Rodriguez' Supplement was filed after the Court's deadline to submit suppression motions, the Court will accept Rodriguez' untimely Supplement to his Suppression Motion. The Court finds that Rodriguez adequately preserved the issue, and the Court will grant Rodriguez'

request to supplement his Suppression Motion.  The Court concludes that Rodriguez' Suppression

Motion failed to preserve the issue, because Rodriguez failed to set forth in his written motion

specific legal arguments or facts to support his Fourth-Amendment arrest argument, and he thus

failed to sufficiently put the Court on notice of the argument.  Because the facts and arguments

underlying Rodriguez' argument were discussed at the suppression hearing, and because the Court

analyzed the issue in its Memorandum Opinion and Order ruling on the motion to suppress, the

argument was adequately preserved under rule 12(b)(3) of the Federal Rules of Criminal Procedure.

Because allowing Rodriguez to supplement his Suppression Motion with the argument that was

discussed at the suppression hearing and analyzed by the Court in its Memorandum Opinion and

Order does not require the expenditure of further Court resources, the Court will exercise its

discretion to accept Rodriguez' untimely Supplement.

## PROCEDURAL BACKGROUND

Rodriguez was indicted on August 9, 2011, and charged with a violation of 18 U.S.C. §§

922(g)(1) and 924(a)(2): Felon in Possession of a Firearm and Ammunition.  See Indictment (Doc.

11).  On October 3, 2011, Rodriguez filed Defendant's Motion and Memorandum to Suppress

Evidence, moving to exclude the confession that he made to Albuquerque Police Department

("APD") officers.  See Doc. 24 (" Suppression Motion").  In his Suppression Motion, Rodriguez

argued for the exclusion of evidence of his confession based on several theories, including: (i) the

APD officers performed an investigatory detention without reasonable suspicion, see Suppression

Motion at 4-13; (ii) the APD officers' detention of Rodriguez was not performed pursuant to the

"Community Caretaker Non-Investigative Function and Officer Safety," Suppression Motion at 13-

15; (iii) the confession was therefore unconstitutionally obtained and the exclusionary rule applies

to exclude it, see Suppression Motion at 15-17; (iv) Rodriguez' pre-arrest statements were fruit of

the poisonous tree and should also be excluded, <u>see</u> Suppression Motion at 17-20; and (v) that his detention was the product of "Selective Enforcement," because the APD officers responded to the call because the 911 caller described him as "Arab." Suppression Motion at 20.

In its Response of the United States to Defendant's Suppression Motion and Memorandum to Suppress Filed October 3, 2011, filed Oct. 18, 2011 (Doc. 26)("Response"), Plaintiff United States of America raised the issue that, pursuant to N.M.S.A. 1978, § 29-12-12 and N.M.R.A. § 10.8.2.16(D), once the officers observed Rodriguez with the firearm, they had reasonable suspicion of illegal activity because, if he did not have a license or permission to carry a concealed weapon, he was carrying a concealed firearm illegally. <u>See</u> Response at 4-5. The United States noted that, beyond the officers' reasonable suspicion upon seeing Rodriguez' firearm under his shirt when they were in the convenience store, The State of New Mexico Department of Safety ("DPS") regulation, N.M.R.A. § 10.8.2.16(D), permits an officer to ask anyone carrying a firearm to provide the officer with the license allowing the person to carry the firearm, and requires the person to comply with the request. <u>See</u> Response at 5 & n.1 (quoting N.M.R.A. § 10.8.2.16(D)). The United States argued that, therefore, if the 911 caller did not provide the officers with reasonable suspicion for the investigatory detention, the investigatory detention was supported by reasonable suspicion upon the APD officers seeing Rodriguez carrying a concealed weapon. <u>See</u> Response at 5-6.

The Court held a hearing on November 16, 2011, at which Rodriguez brought to the Court's attention his argument that the APD officers' detention exceeded the scope of an investigatory detention. The Court inquired whether, assuming the 911 call did not give the officers reasonable suspicion on which to conduct an investigatory stop, the United States was correct to assert that the officers still had the authority to ask whether he was carrying a weapon and, if so, to see the weapon.

See Transcript of Hearing at 79:7-13 (taken November 16, 2011)(Court) ("Nov. 16, 2011 Tr.").[1]

Rodriguez responded that, although the DPS regulations provide that an office may inquire whether a person carrying a concealed firearm has a permit to do so, and may request to be shown the permit, the officers' actions did not comport with merely asking for a permit when they pushed Rodriguez out of the store with his hands on his head.  See Nov. 16, 2011 Tr. at 79:14-24 (Middlebrooks). Rodriguez argued, therefore, that, whether the DPS regulation provided the APS officers with reasonable suspicion, which he did not concede that it did in a private business, the APD officers nevertheless exceeded the scope of the investigatory detention.  See Nov. 16, 2011 Tr. at 80:17-82:9 (Middlebrooks).  The United States responded that, in light of the DPS regulation permitting the officers to ask for a permit, the moment the officers saw Rodriguez' gun they had reasonable suspicion to conduct an investigatory stop to the extent that they could dissipate their suspicion by ensuring that Rodriguez was permitted to carry the weapon, and the officers' order that Rodriguez put his hands up and proceed outside was done to ensure their safety.  See Nov. 16, 2011 Tr. at 82:12-25 (Barth).  Rodriguez also argued that the officers' order to him to put his hands up in the air inside the convenience store was the legal equivalent of being in custody for Fifth Amendment purposes.  See Nov. 16, 2011 Tr. at 88:2-4 (Middlebrooks).  The United States responded that an arrest occurred only after the officers learned that Rodriguez was in possession of a stolen firearm, shortly after he was taken outside.  See Nov. 16, 2011 Tr. at 89:16-19 (Barth).  The United States alleged that officers may restrict a person's movement without transforming an investigatory stop into an arrest.  See Nov. 16, 2011 Tr. at 89:19-23 (Barth).  The Court noted that Rodriguez may have been seized under the Fourth Amendment before an arrest for Fifth Amendment purposes occurred.

---

[1]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

See Nov. 16, 2011 Tr. at 90:24-91:4 (Court).

On December 8, 2011, the Court issued a Memorandum Opinion and Order denying Rodriguez' Suppression Motion.  See Doc. 35 ("MOO").  In its MOO, the Court analyzed whether the APD officers' questioning of Rodriguez outside of the convenience store exceeded the scope of an investigatory detention and amounted to a de facto arrest, concluding that the questioning did not. See MOO at 45-49.  The Court, in a footnote, stated that, although Rodriguez' Suppression Motion did not make clear that Rodriguez was raising the issue whether the officers' investigatory stop exceeded its scope and became a Fourth-Amendment arrest, the Court was addressing it based on Rodriguez' arguments at the hearing:

> The Court notes that it is not clear from Rodriguez' Suppression Motion that he argues that the officers' investigatory stop exceeded the permissible scope of an investigatory stop and thus required probable cause to support an arrest.  It is clear that Rodriguez made arguments on these issues at the hearing.  Rodriguez may not have adequately presented these arguments to the Court to avoid their waiver by failing to raise them properly in his Suppression Motion.  Given the argument at the suppression hearing, the Court will assume that Rodriguez has adequately presented these arguments for its consideration and will address these arguments.

MOO at 45 n.10.  Additionally, in concluding that the APD officers had reasonable suspicion to perform an investigatory stop of Rodriguez, because they observed him carrying a concealed handgun, the Court took into consideration the implications of the DPS regulations.  See MOO at 36 (noting that "New Mexico law expressly permits officers to inquire of persons carrying a concealed handgun whether they have a license to do so" (citing N.M.S.A. § 10.8.2.16)).

Rodriguez filed his Supplement on January 9, 2012, requesting the Court to allow Rodriguez to supplement his Suppression Motion to make clear his argument that the officers' detention exceeded the permissibility of an investigatory detention, and also requesting the Court to make a finding that the arguments he puts forth in his Supplement were made in a timely manner.  See

Supplement at 1.  Rodriguez asserts that, in addition to making the argument that the APD officers'
detention exceeded the scope of an investigatory stop at the November 16, 2011, suppression
hearing, he made the argument in his Suppression Motion at "pp. 16 and 18-19."  Supplement at 2.
Rodriguez concedes that he "did not cite case law in his Suppression Motion addressing the factors
considered . . . relevant in determining whether an arrest has occurred for Fourth-Amendment
purposes," but he contends that "he did make written argument that the behavior and actions would
indicate to a reasonable person that he was not free to leave and that he was under arrest."
Supplement at 2 (citing Suppression Motion at 16, 18-19).  Rodriguez argues that the APD officers'
detention was a de facto arrest under the factors set forth in California v. Hodari, 499 U.S. 621, 626
(1991), because: (i) Officer Frank Munoz, one of the APD officers who questioned Rodriguez,
admitted at the November 16, 2011, suppression hearing that Rodriguez was not free to leave; and
(ii) the presence of the officers was threatening and indicated to Rodriguez that he "had no choice
but to comply with their requests and to answer their questions."  Supplement at 2-3.

> Rodriguez states that he
>
> also argued at the suppression hearing that APD officers exceeded the scope of their
> authority in connection to the Department of Public Safety regulations . . . .
> provid[ing] that a licensee carrying a concealed handgun on or about his person in
> public shall, upon demand of a peace officer, display his license to carry a concealed
> handgun.

Supplement at 3.  Rodriguez thus asks the Court to find that these arguments were timely made
"either in his written [Suppression Motion] . . . or to amend the scheduling order nunc pro tunc to
allow this supplemental pleading to be timely, thus preserving the issue of the de facto arrest for
appeal."  Supplement at 4.

The United States did not take a position on Rodriguez' Supplement, see Supplement at 4,
and did not file a response to the Supplement.  At the July 6, 2012 sentencing hearing, after the

Court sentenced Rodriguez and asked the parties if there was anything further, Rodriguez brought

up whether the Court had made a finding in regard to the Supplement.  See Transcript of Hearing

at 32:25-33:15 (taken July 6, 2012)(Middlebrooks)("July 6, 2012 Tr.").  The Court responded that

it had not anticipated hearing any arguments related to the Supplement, and that it could not, at that

time, make a finding whether the arguments were timely made.  See July 6, 2012 Tr. at 33:16-20

(Court).  The Court stated that it did not recall any arguments regarding the DPS regulations being

argued to the Court at the November 16, 2011, suppression hearing, and it would have to review the

transcript and the MOO to find whether the DPS regulations were discussed.  See July 6, 2012 Tr.

at 33:20-24 (Court).  The Court noted that, while it was not prepared at the current time to hear the

matter, the Court could set a hearing and rule at that time.  See July 6, 2012 Tr. at 34:6-8 (Court).

Rodriguez responded that he made the arguments regarding the APD officers exceeding their lawful

authority under the DPS regulations at the November 16, 2011 hearing, and that he interpreted

footnote 10 in the Court's MOO to have noted that fact, but that he submits his Supplement to make

sure that the issue was preserved for appeal.  See July 6, 2012 Tr. at 34:11-21 (Middlebrooks).  The

Court responded that it would review the transcript from the hearing and its MOO, and that, if a

hearing was required, then it would set one at a later date.  See July 6, 2012 Tr. at 34:22-25 (Court).

## **RELEVANT LAW REGARDING RULE 12**

Rule 12(b)(3) of the Federal Rules of Criminal Procedure states that a motion to suppress

evidence "must be raised before trial."  Fed. R. Crim. P. 12(b)(3).  Rule 12(c) states that "[t]he court

may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make

pretrial motions and may also schedule a motion hearing."  Fed. R. Crim P. 12(c).  See United States

v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990)("The district court has the authority to establish a

schedule of deadlines for defendants to file motions and requests prior to trial under Rule 12(c) of

the Federal Rules of Criminal Procedure.").  "A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides."  Fed. R. Crim. P. 12(e).

1.      **Rule 12(e) Waiver.**

The rule 12(e) waiver "applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion."  United States v. Burke, 633 F.3d 984, 987 (10th Cir. 2011)(quoting United States v. Dewitt 946 F.2d 1497, 1502 (10th Cir. 1991)). "[W]hile a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of defendant's objections."  United States v. Hewlett, 395 F.3d 458, 460 (D.C. Cir. 2005)(quoting United States v. Mitchell, 951 F.2d 1291, 1296 (D.C. Cir. 1991)).  A party's "failure to raise a specific argument in a suppression hearing results in a waiver on appeal unless the party is able to show cause why it failed to raise the argument below."  United States v. Hamilton, 587 F.3d 1199, 1216 (10th Cir. 2009)(emphasis omitted)(quoting United States v. Banks, 451 F.3d 721, 727-28 (10th Cir. 2006)).

The United States Court of Appeals for the Tenth Circuit has explained the policy considerations supporting the waiver rule:

> [T]here are fairness concerns militating in favor of a waiver rule because[,] although the government can appeal an adverse ruling on a suppression motion prior to trial, it cannot do so once jeopardy has attached, as would be the case on appeal. Similarly, if a defendant is able to challenge the inclusion of evidence upon appeal, the government will face the difficult task of defending itself based on a potentially meager record.

United States v. Hamilton, 587 F.3d at 1214 (internal quotations and citations omitted).  The Supreme Court of the United States has also discussed these policy considerations:

> No procedural principle is more familiar to this Court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of

the right before a tribunal having jurisdiction to determine it.

If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.

This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "'sandbagging'" the court -- remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.

Puckett v. United States, 556 U.S. 129, 134 (2009).

If the specific argument for suppression is not raised at all in the motion or in oral arguments at the suppression hearing, even if the argument is "indirectly related to arguments" that were made, the specific argument is nevertheless waived. United States v. Hamilton, 587 F.3d at 1215 ("To be sure, these arguments are indirectly related to the Terry stop[2] argument raised in the suppression motion, because a Terry detention may be transformed into a custodial arrest under certain circumstances. However, the motion did not sufficiently provide notice to the district court of such an escalation-to-arrest argument." (internal citations omitted)). In United States v. Hamilton, the

---

[2]As the Tenth Circuit has explained, a Terry "stop" or Terry "detention" is a term that refers to a stop under Terry v. Ohio, 392 U.S. 1 (1968), for which a police officer needs less than probable cause, otherwise referred to by the Court in this Memorandum Opinion and Order as an investigatory detention. United States v. King, 990 F.2d 1552, 1557 (10th Cir. 1997)(noting that under "Terry . . . an investigative detention ('stop') [is a detention] in which a police officer, for the purpose of investigation, may briefly detain a person on less than probable cause . . .").

Tenth Circuit held that the defendant waived his arguments that the investigatory stop exceeded its scope and was a de facto arrest, because, although the defendant filed a timely motion to suppress evidence based on violations of Terry v. Ohio, 392 U.S. 1 (1968), the defendant's "arguments regarding custodial interrogation, Miranda[3] violations, and coerced statements were not raised in the motion or at the evidentiary hearing."  587 F.3d at 1214-15.  The Tenth Circuit stated that the defendant's motion assumed that the detention was not an arrest and focused on the alleged lack of reasonable suspicion.  See 587 F.3d at 1215.  Similarly, in United States v. Burke, the Tenth Circuit held that the defendant had waived the argument that the affidavits provided to the magistrate lacked probable cause, because the suppression motion and oral arguments at the hearing focused on whether the warrant lacked sufficient particularity.  See 633 F.3d at 988 ("The briefs and the oral arguments at the hearing focused exclusively on whether the warrant lacked sufficient particularity to guide the police in their search of Burke's property.  At no time did Burke argue the affidavit was insufficient to provide the magistrate with probable cause.").  In United States v. Barajas-Chavez, 358 F.3d 1263 (10th Cir. 2004), the Tenth Circuit held that the district court did not abuse its

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966), "requires that procedural safeguards be administered to a criminal suspect prior to 'custodial interrogation.'" United States v. Perdue, 8 F.3d at 1463 (quoting Miranda v. Arizona, 384 U.S. at 444).  The Supreme Court provided the substance of the warning that must be given to a defendant to meet these procedural safeguard requirements:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

Miranda v. Arizona, 384 U.S. at 444-45.

discretion in finding that the defendant waived the issue whether a roadblock was illegal, even though the defendant made a few references to the matter in the written suppression motions and at the hearing.  358 F.3d at 1267.  The Tenth Circuit stated that the defendant's "written filings . . . made only perfunctory references to the stop and search, with no mention of any facts showing the roadblock was illegal."  358 F.3d at 1266-67.  The Tenth Circuit explains:

> The closest [the defendant] comes to addressing the legality of the roadblock in his motions is in his Motion to Suppress Evidence where he argues "that both the stop and arrest of defendant were illegal, that all evidence seized was a result of the exploitation of the illegality, and that the evidence should therefore be excluded." He makes no mention of the roadblock and it is unclear which aspect of the "stop" he considered illegal.

358 F.3d at 1266-67 n.2.  In regard to mentioning the issue at the hearing, the Tenth Circuit noted that the defendant "made a few isolated remarks about the roadblock's legality, but again set forth no specific legal arguments or facts to support his position. . . . [and] the district court noted that the testimony at the evidentiary hearing was nearly identical to that provided in the briefs."  358 F.3d at 1267.

The United States Court of Appeals for the Eleventh Circuit in United States v. Adams, 11-11106, 2012 WL 3483194 (11th Cir. Aug. 15, 2012)(unpublished)[4], held that the district court did not abuse its discretion in not accepting the defendant's second motion to suppress, which the

_____

[4]United States v. Adams is an unpublished order and judgment, but the Court can rely on it to the extent its reasoned analysis is persuasive in the present case.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).

-11-

defendant "labeled as an addendum to the first, timely motion," filed eleven days after the deadline, because "the motion was a separate motion that raised new legal issues." 2012 WL 3483194, at *1.

### 2.    <u>Good Cause to Grant Relief from a Waiver Under Rule 12(e)</u>.

"For good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e). "A district court's decision to decline to hear an untimely suppression motion is reviewed for abuse of discretion." <u>United States v. Gonzales</u>, 229 F. App'x 721, 725 (10th Cir. 2007)(unpublished) (quoting <u>United States v. Booker</u>, 952 F.2d 247, 249 (9th Cir. 1991)). The Tenth Circuit, in <u>United States v. Bryant</u>, 5 F.3d 474 (10th Cir. 1993), held that the record clearly indicated that the defendant failed to show cause for his failure to make a timely motion raising his selective prosecution argument before trial. <u>See</u> 5 F.3d at 476. "The fact that trial counsel, who had been serving as co-counsel in Defendant's case, was not officially appointed by the court until two days before trial was not sufficient cause." 5 F.3d at 476. "Defendant has made no allegations that prior defense counsel was prevented from filing the motion or that trial counsel, during the time he served as co-counsel, was prevented from filing, or urging Defendant's second counsel to file the motion." 5 F.3d at 476.

In <u>United States v. Gonzales</u>, 229 F. App'x 721 (10th Cir. 2007), the Tenth Circuit held that the district court did not abuse its discretion when it determined that the defendant's motion to dismiss and motion to disclose the identity of the confidential informant were untimely. <u>See</u> 229 F. App'x at 726. The defendant filed his motions one business day before his trial was set to begin, after the deadline for pretrial motions. <u>See</u> 229 F. App'x at 726. The Tenth Circuit noted that the defendant did not argue that the facts upon which his motions relied could not have been fully discovered by the date set for those motions. <u>See</u> 229 F. App'x at 726.

He does argue that the district court should have inquired whether there was

good cause for the untimely motions before summarily dismissing them.  Had the court done so, he contends, it would have recognized that the eight continuances during the course of Mr. Gonzales's representation by two separate counsel resulted in the filing of no substantive motions on his behalf.  He argues that "[t]he issues in the[ present] motions were, essentially, Mr. Gonzales' only legal defense." Aplt's Br. at 34.   Mr. Gonzales suggests that the district court should have exercised its discretion to hear his untimely motions "in the furtherance of justice."  Id. at 35.

. . . .

When the district court appointed Mr. Bierly in August 2005, it informed him that there would be no more continuances and to be prepared for trial beginning in October 2005.  Mr. Gonzales did not indicate that he disagreed with his counsel's tactics before trial. There is no cause given for the belated filings, apart from Mr. Gonzales's present contention of ineffective assistance of counsel, which we address below.  Moreover, the district court also dismissed the motions on the merits, further undermining Mr. Gonzales's argument.  Accordingly, we hold that the district court did not abuse its discretion when it determined that Mr. Gonzales's motion to dismiss and motion to disclose the identity of the confidential informant were untimely.

229 F. App'x at 726.

The Eleventh Circuit, in United States v. Adams, held that the defendant failed to show good cause for not raising the issues that he raised in his second motion to dismiss -- labeled as an addendum to the first -- where the defendant's new counsel had "more than four weeks to file a motion to suppress based on the Fourth Amendment and that is sufficient time for counsel to file such a motion."  2012 WL 3483194, at *1.   The Eleventh Circuit reasoned that the defendant's new counsel was present at a hearing almost six weeks before the deadline to submit motions to suppress and timely filed a motion to suppress evidence that was discussed at the hearing.  See 2012 WL 3483194, at *1.  The Eleventh Circuit also noted that "counsel provided no explanation for why he could not have raised the Fourth Amendment challenge in his first, timely filed motion."  2012 WL 3483194, at *1.

## RELEVANT LAW REGARDING FOURTH-AMENDMENT SEIZURES

For purposes of analyzing Fourth Amendment seizures, the Tenth Circuit has divided interactions between police and citizens into three categories: (i) consensual encounters; (ii) investigative stops; and (iii) arrests.  See Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000). A consensual encounter occurs when a police officer approaches a person to ask questions under circumstances where a reasonable person would feel free to refuse to answer and to end the encounter.  See Oliver v. Woods, 209 F.3d at 1186.  For example, officers generally may "go to a person's home to interview him," United States v. Daoust, 916 F.2d 757, 758 (1st Cir. 1990), because "[i]t is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business,"  1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(b), at 475 (3d ed. 1996).  Such encounters generally "are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing."  Oliver v. Woods, 209 F.3d at 1186.

1.      **Investigative Detentions and Reasonable Suspicion.**

An encounter that is not consensual may nevertheless be justified as an investigative detention.  An investigative detention occurs when an officer stops and briefly detains a person "in order to determine his identity or to maintain the status quo momentarily while obtaining more information." Oliver v. Woods, 209 F.3d at 1186 (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)).  Inasmuch as such brief investigative detentions are not consensual, they constitute a seizure and must meet two distinct requirements to be "reasonable" under the Fourth Amendment.  First, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Oliver v. Woods, 209 F.3d at 1186 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  Second, the investigative detention that follows the stop must be

"reasonably related in scope to the circumstances" which justified the stop in the first place, Terry v. Ohio, 392 U.S. at 20, because the Fourth Amendment imposes "limitations on both the length of the detention and the manner in which it is carried out," United States v. Holt, 264 F.3d 1215, 1229 (10th Cir. 2001)(en banc).

"For reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct;' he or she simply must possess 'some minimal level of objective justification' for making the stop." United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009)(quoting United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004)). This standard is met by information "falling 'considerably short' of a preponderance standard." United States v. Winder, 557 F.3d at 1134. See Illinois v. Wardlow, 528 U.S. 119, 123 (2000)(noting that "'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence . . ."). A police/citizen encounter that goes beyond the limits of a stop under Terry v. Ohio is an arrest which must be supported by probable cause or consent to be valid. See United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)("An encounter between police and an individual which goes beyond the limits of a Terry stop, however, may be constitutionally justified only by probable cause or consent.").

An officer may "stop and frisk" an individual under the Fourth Amendment if a reasonably prudent person "in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27. A frisk "must . . . be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry v. Ohio,

392 U.S. at 29.  In evaluating the validity of the stop-and-frisk, the totality of the circumstances must

be considered.  See Florida v. Bostick, 501 U.S. 429, 436 (1991).

The Tenth Circuit has recognized the doctrine in Terry v. Ohio of an investigative detention

-- "stop" --  and of a protective search --  "frisk."

> Terry has come to stand for two distinct propositions -- an investigative detention
> ("stop") in which a police officer, for the purpose of investigation, may briefly detain
> a person on less than probable cause, . . . and a protective search ("frisk") which
> permits an officer, in the course of an investigative detention, to conduct a limited
> search for weapons for his or her own protection.

United States v. King, 990 F.2d 1552, 1557 (10th Cir. 1997)(citations omitted)).  The legal standard

is whether a "stop and frisk" is reasonable under the Fourth Amendment.  United States v. King, 990

F.2d at 1557.

In United States v. Johnson, 364 F.3d 1185 (10th Cir. 2004), the Tenth Circuit held that an

officer had reasonable suspicion to continue questioning and to frisk a suspect after: (i) the officer

had responded to a call from a citizen who gave his telephone number, and gave a detailed and

accurate description of possible criminal activity and of the suspect; (ii) the contact occurred in

Albuquerque, New Mexico's highest-crime area; and (iii) the suspect displayed nervous behavior.

See 364 F.3d  at 1194.  The Tenth Circuit noted that the officer's experience and training allowed

him to make inferences, based on a combination of the surrounding circumstances, that criminal

activity was afoot.  See 364 F.3d at 1194 ("His suspicions were particularized to [the suspect], and

were based on how his training and experience taught him to interpret a number of objectively

reasonable details.").  While many of the factors that the Tenth Circuit considered did not, without

more, give rise to reasonable suspicion, the combination of circumstances was sufficient.  See 364

F.3d at 1193 (noting that the district court had erred, because "[a]ll of these factors, mitigating and

aggravating, should have been analyzed as part of the totality of the circumstances faced by [the

officer] at the inception of the detention").

In <u>United States v. Ceballos</u>, 355 F. App'x 226 (10th Cir. 2009)(unpublished), the police officer observed a young girl walking down the street at night.  <u>See id.</u> at 227-28.  A truck pulled up alongside the girl, the driver of the truck and the girl spoke briefly, then the truck drove ahead and the girl continued on her walk.  <u>See id</u>.  Rather than leave, however, the truck drove ahead and parked with its lights off at a dark spot on the road by which the girl would have to walk.  <u>See id</u>.  The officer spoke to the girl, who seemed unconcerned and told him that the man in the truck had asked only if she needed a ride; she had refused.  <u>See id</u>.  Not investigating any particular crime or suspected-crime, and admittedly acting on a "hunch," the officer turned on his emergency lights and pulled up behind the truck.  <u>Id</u>.  Upon talking to the truck's driver, Ceballos, the officer discovered that Ceballos' breath smelled of alcohol, he did not have a driver's license, and he had a gun and other items in his vehicle.  <u>See</u> 355 F. App'x at 227-29.  The Tenth Circuit found that the facts available to the officer would have led a reasonable officer to conclude that reasonable suspicion existed, and that the officer's "subjective characterization of his actions is irrelevant." 355 F. App'x at 229.  The Tenth Circuit explained:

> A review of the totality of the circumstances shows Gallegos was not acting on an unparticularized hunch; during his testimony he articulated specific facts that caused him to suspect Ceballos intended to assault or abduct the teenage pedestrian. Specifically, at the time Gallegos initiated the traffic stop, he had observed Ceballos slow his vehicle as he passed a teenage girl walking alone late at night. He then observed Ceballos alter his route by making a U-turn and following the girl down a narrow, nearly deserted residential street. Ceballos pulled alongside the girl, who he did not know, and asked her if she wanted a ride. She refused, telling him she lived up the street. Ceballos then drove further down the road, pulled into a driveway as if to turn around and return to the main road, but instead backed out and drove a few feet further east, in the same direction the girl was walking. He parked in a dark location and turned off his lights.
>
> . . . .

-17-

> We agree with the Government that Officer Gallegos had reasonable suspicion to stop and detain Ceballos.  Ceballos showed an interest in a teenage girl he did not know, to the point that he changed his route to follow her down a dark street, offered her a ride, and then parked where the girl would be required to walk past him as she continued to her home.  The facts found by the district court, viewed in totality, amply support the constitutionality of the investigative detention.

355 F. App'x at 229.  The Tenth Circuit did not require the officer to identify the particular crime of which the officer had reasonable suspicion, or even to acknowledge having reasonable suspicion. The Tenth Circuit was content to find that a reasonable officer would have reasonable suspicion that "Ceballos intended to assault or abduct the teenage pedestrian."  355 F. App'x at 229.  The Tenth Circuit demanded only that an officer have facts from which a reasonable officer could form a reasonable suspicion that criminal conduct was occurring or was about to occur.  See 355 F. App'x at 229.

In United States v. Aragones, No. CR 11-2142, 2012 WL 1764222 (10th Cir. May 18, 2012)(unpublished), the Tenth Circuit found reasonable suspicion based upon an officer's knowledge of the defendant's:

> (1) gang tattoo; (2) presence in a high crime area; (3) abrupt move away from the officer as soon as [the defendant] saw [the officer]; (4) glancing about in a manner consistent with an attempt to find a route to flee; and, (5) approach to [a private] home's back door without conversing with the residents visible inside.

2012 WL 1764222, at *2.  At the district court level, in ruling on the motion to suppress, the Honorable Martha Vazquez, United States District Court Judge, had concluded that, because the defendant's conduct in standing outside a private residence and looking in "was consistent with the most benign of conduct, including a visit to a friend's house or calling upon a neighbor for assistance," the officer did not have reasonable suspicion at the time of the stop and should have waited longer to rule out innocent conduct.  2012 WL 1764222, at *2 (quoting District Court Opinion at 19).  The Tenth Circuit disagreed, however, stating: "The problem is that conduct giving

rise to reasonable suspicion sufficient to support an investigative detention can be -- and often is -- consistent with innocent behavior." 2012 WL 1764222, at *3. The Tenth Circuit noted that, moreover, the defendant's conduct was not necessarily innocent, because an Albuquerque public ordinance prohibits "[e]ntering upon any private property and looking into any occupied dwelling without the consent of the occupant or owner of the dwelling." 2012 WL 1764222, at *2 (quoting Albuquerque Ord. § 12-2-21(B)). The Tenth Circuit thus reversed Judge Vazquez' judgment, disagreeing with her finding that the officer lacked reasonable suspicion of unlawful activity, and concluded that "a reasonable officer could have suspected that [the defendant] wasn't a welcome guest and did not have consent to look into the home." 2012 WL 1764222, at *2.

       2.    **Arrests.**

A seizure that exceeds the investigative detention's limited scope or duration may nevertheless be justified as an arrest. An arrest is a seizure that is "characterized by highly intrusive or lengthy search or detention." Oliver v. Woods, 209 F.3d at 1186 (quoting United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir. 1984)). The general rule is that "the use of firearms, handcuffs, and other forceful techniques" is sufficiently intrusive to signal that a person has been placed under arrest. United States v. Melendez-Garcia, 28 F.3d 1046, 1052-53 (10th Cir. 1994). See Florida v. Royer, 460 U.S. 491, 499 (1983). "Inasmuch as an arrest exceeds an investigative stop's limited scope or duration, it must be supported by probable cause." United States v. Rodriguez, 836 F. Supp. 2d 1258, 1288 (D.N.M. 2011)(Browning, J.).

### RELEVANT FIFTH AMENDMENT LAW

The Fifth Amendment's self-incrimination clause states: "No person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Statements that a defendant makes during a law-enforcement officer's a custodial interrogation are generally not

admissible as evidence against that defendant if the declarant has not received the warnings that Miranda v. Arizona, 384 U.S. at 436, requires.  See Dickerson v. United States, 530 U.S. 428, 444 (2000); United States v. Chee, 514 F.3d 1106, 1112 (10th Cir. 2008).  The requirements of Miranda v. Arizona, however, are limited.  "Police officers need not administer Miranda warnings to everyone they question."  United States v. Jones, 523 F.3d 1235, 1239 (10th Cir. 2008).  Rather, "Miranda applies only to 'custodial interrogation[s].'"  United States v. Jones, 523 F.3d at 1239 (quoting Miranda v. Arizona, 384 U.S.  at 444).

In other words, "Miranda rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'"  United States v. Chee, 514 F.3d at 112 (quoting United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993)).  Any questioning by law-enforcement officers "reasonably likely to elicit an incriminating response" constitutes an interrogation.  Rhode Island v. Innis, 446 U.S. 291, 301 (1980).  See United States v. Medrano, 356 F. APP'X 102, 107 (10th Cir. 2009)(unpublished); United States v. Parra, 2 F.3d 1058, 1068 (10th Cir. 1993).  The "in custody" requirement is satisfied only when a suspect's "freedom of action is curtailed to the degree associated with formal arrest."  Berkemer v. McCarty, 468 U.S. 420, 440 (1984)(quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)).  See United States v. Jones, 523 F.3d at 1239.  Further, "'the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'"  United States v. Rogers, 391 F.3d 1165, 1171 (10th Cir. 2004)(quoting Stansbury v. California, 511 U.S. 318, 323 (1994)).  In determining the custodial nature of an interrogation, the Court must "determine whether 'a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest.'"  United States v. Chee, 514 F.3d at 1112 (quoting Berkemer v. McCarty, 468 U.S. at

442)(alterations omitted).

The Tenth Circuit, in recognizing that an examination of the totality of the circumstances is fact intensive, has instructed district courts to consider a number of non-exhaustive factors in determining whether a custodial interrogation took place.  See United States v. Jones, 523 F.3d at 1240.  Those factors include: (i) whether the suspect is informed that he or she may end the interview at will or is not required to answer questions; (ii) whether the nature of the interview is likely to create a coercive environment from which a suspect would not feel free to leave, such as where there is prolonged accusatory questioning; and (iii) whether the police dominate the encounter with the suspect.  See 523 F.3d at 1240 (quoting United States v. Griffin, 7 F.3d 1512, 1518 (10th Cir. 1993)).  Police domination of the encounter is indicated by: (i) separating the suspect from others who could lend moral support; (ii) isolating the suspect in nonpublic questioning rooms; (iii) the threatening presence of multiple officers; (iv) displaying of weapons by an officer; (v) physical contact with the suspect; and (vi) use of language or vocal tones which suggest that compliance with an officer's request is compulsory.  See 523 F.3d at 1240.  The Tenth Circuit was deliberate in emphasizing, however, that courts must consider the circumstances surrounding the police-citizen encounter as a whole, rather than exclusively relying on some enumerated factors while ignoring others.  See 523 F.3d at 1240.

## ANALYSIS

Rodriguez, in his Suppression Motion, failed to set forth specific facts and arguments to support his argument that, regardless whether the APD officers had reasonable suspicion for an investigatory stop, the investigatory detention of him exceeded the permissible scope of an investigatory stop, thus elevating the detention to a de facto arrest.  Although Rodriguez failed to sufficiently raise this specific argument in his Suppression Motion, the issue was discussed at the

November 16, 2011, suppression hearing, and the Court, in its MOO, addressed the argument whether the APD officers exceeded the scope of an investigatory detention. The Court thus finds that Rodriguez did not waive the issue under rule 12(e) of the Federal Rules of Criminal Procedure. Because accepting Rodriguez' Supplement to his Suppression Motion does not require the Court to hear more facts at a suppression motion or analyze any new arguments, the Court will exercise its discretion to accept Rodriguez' untimely Supplement.

I.      **RODRIGUEZ FAILED TO RAISE IN HIS SUPPRESSION MOTION HIS ARGUMENT THAT HE WAS UNDER ARREST FOR FOURTH-AMENDMENT PURPOSES WHEN THE APD OFFICERS TOOK HIM OUTSIDE THE STORE WITH HIS HANDS ON HIS HEAD.**

"A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." Fed. R. Crim. P. 12(e). In the Tenth Circuit, this waiver "applies not only to the failure to make a pretrial Suppression Motion, but also to the failure to include a particular argument in the Suppression Motion." United States v. Burke, 633 F.3d at 987. Rodriguez' headings in his Suppression Motion delineate five separate grounds on which he moved to exclude evidence of his confession under the exclusionary rule, none of which specifically argue that the APD officers' detention crossed the line from an investigatory detention -- or stop under Terry v. Ohio -- to an arrest. As Rodriguez asserts in his Supplement, in his Suppression Motion, within the discussion under the heading "Exclusionary Rule," he states:

> Rodriguez was effectively seized by officers when he was told to stand up, place his hands on his head and then pushed by officers outside the store where they grabbed the gun and began questioning him. A reasonable person in Rodriguez' position would not have felt free to terminate this encounter in light of the circumstances.

Suppression Motion at 16.

Rodriguez' language comports with alleging that the APD officers had exceeded the permissibility of an investigatory stop, requiring reasonable suspicion only, and had crossed the

threshold into a seizure, or de facto arrest, requiring probable cause.  See United States v. King, 990 F.2d at 1556 ("[A] person is seized for Fourth Amendment purposes when, considering all the surrounding circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (quoting Florida v. Bostick, 501 U.S. at 434)).  On the other hand, this statement follows only on the heels of Rodriguez' argument that his handgun and ammunition, which were seized at the scene, should be excluded under the exclusionary rule, because "there is a factual nexus between such evidence and the Fourth Amendment violation which preceded the discovery, specifically, the unlawful seizure of him."  Suppression Motion at 16.  Arguing that the officers seized Rodriguez does not sufficiently give notice to the Court that Rodriguez was arguing that the officers' investigatory detention exceeded its scope and became an arrest, because the term seizure includes both investigatory detentions and arrests.  See Oliver v. Woods, 209 F.3d at 1186 ("An investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause." (citing United States v. Espinosa, 782 F.2d 888, 890 (10th Cir.1986)); id. (noting that an arrest is a seizure that is "characterized by highly intrusive or lengthy search or detention.").  Notably, and perhaps determinative, nowhere on page sixteen does Rodriguez mention the word arrest, or the phrase probable cause -- which is required for a Fourth-Amendment arrest to comply with the Constitution.  To contend that the officers' conduct in questioning Rodriguez outside the store violated the Fourth Amendment because it was an unlawful seizure, without any mention of the word arrest or the phrase probable cause, leads the Court to conclude that this portion of Rodriguez' Suppression Motion to which he refers the Court  does not contain facts or arguments that make clear the basis of Rodriguez' objection -- that the APD officers' seizure was a de facto arrest.  See United States v.

Hewlett, 395 F.3d at 460 ("[W]hile a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of defendant's objections.").

Rodriguez also directs the Court to pages eighteen through nineteen, which contains his argument that the Court should exclude his pre-arrest statements as "fruit of the poisonous tree," because "Rodriguez was 'in custody' for Miranda purposes at the time he was taken outside the store." Suppression Motion at 18-19. Rodriguez' reference to this discussion of statements made after the APD officers took him outside the store for questioning under the heading "Rodriguez' Pre-Arrest Statements" for the proposition that the officers taking him outside was an arrest is perplexing. Suppression Motion at 17 (emphasis added). Equally unpersuasive is that Rodriguez refers to his argument under Miranda v. Arizona in support of his contention that he raised the issue whether, under the Fourth Amendment, the questioning was a seizure that exceeded the permissible scope of an investigatory stop, amounting to an arrest, in light of the footnote he includes within this argument, which notes that Miranda custodial interrogations and Fourth-Amendment seizures are distinct. See Suppression Motion at 18-19 n.6 ("Without conceding that a valid Terry stop existed here or that Rodriguez was a dangerous person, the traditional view is that Miranda warnings are not implicated in the context of a valid Terry stop." (citing United States v. Perdue, 8 F.3d at 1464)). As Rodriguez correctly concedes in his footnote, Miranda custodial interrogations and Fourth-Amendment seizures are separate inquiries and receive a separate analysis. While Rodriguez might perhaps argue that the inquiry under Miranda v. Arizona and the reasonableness inquiry for a stop under Terry v. Ohio should not be distinct, or that a custodial interrogation necessarily requires there to have been a Fourth-Amendment arrest, he did not do so in this Suppression Motion. This argument further cuts against Rodriguez' assertion that he raised the issue that the APD officers'

investigatory detention outside the store was a de facto arrest, because the only mention of arrest that Rodriguez makes on the page is to note that "[a] suspect can be placed in police custody for purposes of Miranda before . . . [being] arrested in the Fourth Amendment sense."  Suppression Motion at 18.  Rather than implying that, because Rodriguez should have been Mirandized as he was in custody and therefore also had been de facto arrested, that a suspect may be in custody before being arrested implies that, even if, or even though, the APD officers' questioning Rodriguez did not amount to a de facto arrest, Rodriguez was nonetheless in custody.  This portion of Rodriguez' Suppression Motion to which Rodriguez refers the Court thus did not make clear the basis of Rodriguez' objection that the stop under Terry v. Ohio, or Fourth-Amendment seizure, was a de facto arrest.  See United States v. Hewlett, 395 F.3d at 460.

This case is analogous to United States v. Barajas-Chavez, in which the Tenth Circuit held that the defendant waived any argument that the roadblock was illegal.  See 358 F.3d at 1267.  The Tenth Circuit noted in regards to the written motion in United States v. Barajas-Chavez:

> The closest [the defendant] comes to addressing the legality of the roadblock in his motions is in his Motion to Suppress Evidence where he argues "that both the stop and arrest of defendant were illegal, that all evidence seized was a result of the exploitation of the illegality, and that the evidence should therefore be excluded." He makes no mention of the roadblock and it is unclear which aspect of the "stop" he considered illegal.

358 F.3d at 1266-67 n.2.  Rodriguez' Suppression Motion also comes close to addressing that the APD officers' investigatory detention exceeded its scope and escalated to a de facto arrest, but because he makes no mention that the officers' seizure amounted to an arrest, or that the officers lacked probable cause, as in United States v. Barajas-Chavez, Rodriguez "set forth no specific legal arguments or facts to support his position . . . ."  358 F.3d at 1267.  As the Tenth Circuit noted that the defendant's "written filings . . . made only perfunctory references to the stop and search, with

-25-

no mention of any facts showing the roadblock was illegal," 357 F.3d at 1267, so here, because Rodriguez' perfunctory statement that "[a] reasonable person in [his] position would not have felt free to terminate the encounter in light of the circumstances," Suppression Motion at 16, without alleging as fact that he was under arrest or that the officers lacked probable cause, or any facts that would have alerted the Court to the argument, Rodriguez' Suppression Motion fails to preserve the argument.

Although Rodriguez uses language in his Suppression Motion similar to language courts use in analyzing whether a Fourth-Amendment seizure amounted to an arrest, rule 12 requires that a party raise its "claims and objections, . . . [so that] the district court [has] the opportunity to consider and resolve them." Puckett v. United States, 556 U.S. at 134.  Rodriguez' Suppression Motion, because it fails to discuss a Fourth-Amendment arrest, did not sufficiently raise its claim or objection that the APD officers' questioning of Rodriguez outside the store was a seizure that amount to de facto arrest under the Fourth Amendment.

II. **BECAUSE THE COURT ANALYZED WHETHER AN ARREST HAD OCCURRED UNDER THE FOURTH-AMENDMENT WHEN THE APD OFFICERS TOOK RODRIGUEZ OUTSIDE THE STORE FOR QUESTIONING IN ITS SUPPRESSION MEMORANDUM OPINION AND ORDER, AND BECAUSE THE FACTS AND ARGUMENTS UNDERLYING RODRIGUEZ' OBJECTION WERE DISCUSSED AT THE SUPPRESSION HEARING, RODRIGUEZ DID NOT WAIVE HIS OBJECTION UNDER RULE 12(e).**

Rule 12 requires certain motions to be made before trial, including a motion to suppress evidence.  See Fed. R. Crim. P. 12(b)(3).  For these motions which rule 12 requires a party to raise before trial, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." Fed. R. Crim. P. 12(e).  Notably, however, rule 12 does not anywhere require that the defenses, objections, or requests be raised explicitly in the written motion, but rather only that they be "raised" or they are

waived.  Fed. R. Crim. P. 12(e).  The Tenth Circuit appears to require only that the arguments be raised before the deadline, even if the party sufficiently raises them orally at the hearing on the motion.  See United States v. Hamilton, 587 F.3d at 1216 (noting that a party's "failure to raise a specific argument in a suppression hearing results in a waiver on appeal . . . .").  Although rule 12 does not define what it means to "raise" a defense, an objection, or a request, the Tenth Circuit appears to consider an issue raised where the party provides sufficient notice to the court that it is making a particular argument, whether in its written motion or at oral argument on the hearing.  See United States v. Hamilton, 587 F.3d at 1215 (holding that the defendant waived the  argument that a seizure amounted to an arrest, because "the motion did not sufficiently provide notice to the district court of such an escalation-to-arrest argument"); United States v. Burke, 633 F.3d at 988 (holding that the defendant waived any argument that the warrant lacked probable cause, because "[t]he briefs and the oral arguments at the hearing focused exclusively on whether the warrant lacked sufficient particularity . . . [rather than] probable cause").

Although Rodriguez' Suppression Motion failed to notify the Court that he intended to argue the APD officers' questioning Rodriguez outside the store escalated the seizure to a de facto arrest, the oral arguments at the suppression hearing provided sufficient notice to the Court that the Fourth-Amendment seizure was a basis on which Rodriguez was objecting.  In response to the Court's inquiry whether the DPS regulation provided the officers with legal authority to investigate whether Rodriguez carrying a concealed firearm was legal, Rodriguez responded that, whether their investigation was legal initially, the officers pushing him out of the store with his hands on his head exceeded the scope of any legal investigatory detention.  See Nov. 16, 2011 Tr. at 79:14-82:9 (Middlebrooks).  Rodriguez asserted that, regardless whether the DPS regulation gave the officers authority to ask him to show his concealed-carry license, the APD officers nevertheless "exceeded

the scope of what they might be allowed to do in the context of the [DPS regulation]."  Nov. 16, 2011 Tr. at 80:22-24 (Middlebrooks).   The discussion quickly shifted to whether APD exceeded the scope of a permissible investigatory detention when they escorted Rodriguez out of the store or when they took the gun from him.  See Nov. 16, 2011 Tr. at 82:10-25 (Court, Barth).  Moreover, in response to the Court's inquiry of when Rodriguez is arguing that the arrest occurred, Rodriguez contended that "the moment that they told [Rodriguez] to stand up and put his hands in the air[,] he was not free to go anywhere at that point."  Nov. 16, 2011 Tr. at 88:2-4 (Middlebrooks).  The Court proceeded to ask whether the United States agreed, and whether the officers' directing Rodriguez outside of the store could still permissibly be within the scope of an investigatory detention.  See Nov. 16, 2011 Tr. at 88:24-89:1 (Court).  The United States responded that directing Rodriguez to show his hands to the officers while exiting the store was still within the scope of an investigatory detention in light of the officers' safety concerns, because they knew that Rodriguez had a gun, and that the seizure escalated to the level of an arrest at the point when the officers discovered the gun was reported as stolen.  See Nov. 16, 2011 Tr. at 89:2-19 (Court, Barth).  Thus, although Rodriguez did not sufficiently provide facts or arguments whether and at what point the investigatory detention escalated to an arrest, the oral arguments at the hearing provided the Court with sufficient notice of Rodriguez' theory, because both parties discussed the underlying facts and arguments.  See also Nov. 16, 2011 Tr. at 90:20-23 (Middlebrooks)("[T]he case law . . . states that if a person in that situation could reasonably believe that they [sic] are detained, then that's to be considered in terms of basically a de facto arrest . . .").  Rodriguez' arguments that the APD officers' questioning him exceeded the scope of their authority under the DPS regulation, and that the questioning exceeded the scope of a permissible investigatory detention, and thus was a Fourth-Amendment arrest, were discussed at the suppression hearing.  The discussion of the de facto arrest at the hearing, even

though not in Rodriguez' Suppression Motion, distinguishes this case from the Tenth Circuit cases in which discussion of the waived argument did not appear at all in the trial court.  See, e.g., United States v. Dewitt, 946 F.2d at 1502 (concluding that the defendant had waived any argument of unlawful detention, because "[u]pon a review of the written motions and the suppression hearing transcript, we find no mention of the issue"); United States v. Hamilton, 587 F.3d at 1215 (holding that the defendant waived the  argument that a seizure amounted to an arrest, because "the motion did not sufficiently provide notice to the district court of such an escalation-to-arrest argument"); United States v. Burke, 633 F.3d at 988 (holding that the defendant waived any argument that the warrant lacked probable cause, because "[t]he briefs and the oral arguments at the hearing focused exclusively on whether the warrant lacked sufficient particularity . . . [rather than] probable cause").

        In addition to Rodriguez' facts and arguments regarding the officers exceeding the scope of an investigatory detention being discussed at the suppression hearing, the Court addressed, in its Memorandum Opinion and Order ruling on the suppression of the evidence, whether the APD officers exceeded the scope of a reasonable investigatory detention.  The Court analyzed whether the APD officers' seizure of Rodriguez, in questioning him outside of the convenience store, amounted to a Fourth-Amendment arrest, and concluded that no arrest had occurred.  See MOO at 45.  That the discussion at the suppression hearing sufficiently provided the Court with notice to decide this issue, and that the Court decided the issue, make Rodriguez' case distinguishable from United State v. Barajas-Chavez, where the Tenth Circuit held the defendant waived the issue even though the defendant "made a few isolated remarks about the roadblock's legality, but . . . set forth no specific legal arguments or facts to support his position."  358 F.3d at 1267.  Were the written motions all that the Court had in front of it at the time Rodriguez filed his Supplement, the Court -- as it did in footnote 10 in its MOO -- would likely find that Rodriguez waived his objection on the

issue under rule 12(e).  That the facts and arguments underlying Rodriguez' objection that the APD officers' questioning amounted to a Fourth-Amendment arrest came out and were discussed at the hearing, and that the Court analyzed and decided the issue in its MOO, makes Rodriguez' case distinguishable from Tenth Circuit cases that have found an argument waived because it was not timely raised.

That the issue was discussed at the hearing and was analyzed by the Court in its MOO sufficiently raised the issue to prevent Rodriguez from having waived his objection under rule 12(e), and preserved the argument.[5]  This conclusion finds support in the policy considerations underlying rule 12's waiver, because there is now not a "meager record," and it will thus not be unfair for the United States to defend itself on appeal.  See United States v. Hamilton, 587 F.3d at 1214. Similarly, because the Court inquired when Rodriguez is contending that the arrest had occurred at the suppression hearing, and -- based on Rodriguez' response -- analyzed a possible argument on

_____

[5]At the arraignment, the Honorable W. Daniel Schneider, United States Magistrate Judge, set a deadline for pretrial motions, including suppression motions, for September 7, 2011.  See Magistrate Clerk's Minutes of Arraignment, filed August 18, 2011 (Doc. 14).  The Court granted Rodriguez' unopposed request to extend the deadline for pretrial motions and extended the deadline to October 7, 2011.  See Unopposed Order to Continue Pretrial Motions and Trial Setting, filed September 12, 2011 (Doc. 22).  Because the Court has found that Rodriguez did not raise the issue of arrest in his timely Suppression Motion, although the issue whether the APD officers' questioning escalated to the level of a Fourth-Amendment arrest was raised at the suppression hearing on November 16, 2011, raising the issue at the hearing was still untimely and would waive the issue under rule 12(e).  See Fed. R. Crim. P. 12(e)("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.").  Under its local rules, however, the Court may waive the pretrial motion deadline to meet unusual circumstances or to avoid injustice. See D.N.M.LR–Cr. 57.1 ("The Court may waive any of the Rules when necessary to meet unusual circumstances or to avoid injustice.").  In the present case, that the Fourth-Amendment arrest issue Rodriguez seeks to preserve was raised and discussed at the hearing without objection, and that the Court has also already decided the issue in its MOO, make the circumstances of Rodriguez' request that the Court find his argument preserved unique.  The Court will therefore extend its October 7, 2011, deadline for the limited purpose of timely raising this one 12(b)(3) objection at the suppression hearing that the APD officers' questioning him outside the store was a de facto arrest.

those grounds, concluding that an arrest had not occurred, the Court's inquiry prevented any possible appearance that Rodriguez may have been sandbagging the issue so that he might raise the objection only on appeal.  See Puckett v. United States, 556 U.S. at 134 (noting that the policy behind a defendant's waiving any objection which the defendant does not timely raise prevents "a litigant from 'sandbagging' the court -- remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.").  Because Rodriguez timely made his arguments about the investigatory detention escalating to a Fourth-Amendment arrest, the Court concludes that Rodriguez did not waive the objection under rule 12(e).

III.  **THE COURT WILL EXERCISE ITS DISCRETION TO ACCEPT RODRIGUEZ' SUPPLEMENT TO HIS SUPPRESSION MOTION, BECAUSE RODRIGUEZ' ARGUMENTS WITHIN HIS SUPPLEMENT WERE DISCUSSED AT THE SUPPRESSION HEARING AND ANALYZED BY THE COURT.**

The Court has discretion to accept an untimely suppression motion.  See United States v. Gonzales, 229 F. App'x at 725 ("A district court's decision to decline to hear an untimely suppression motion is reviewed for abuse of discretion.").  In United States v. Adams, the Eleventh Circuit analyzed a district court's denial of a "motion to suppress [which] was labeled as an addendum to the first, timely filed motion. . . ." 2012 WL 3483194, at *1.  The Eleventh Circuit noted that, as an alternative to asserting that there was good cause to accept the untimely motion, the defendant "assert[ed] that the motion was not a new motion, but an addendum to his first timely motion, and both motions sought the same relief -- exclusion of evidence pursuant to Federal Rule of Evidence 404(b)."  2012 WL 3483194, at *1.  The Eleventh Circuit concluded, however, that, although the motion and the addendum asked for the same relief, suppression of evidence, because the second motion argued a Fourth-Amendment violation where the first only argued violation of rule 404(b), "the [addendum] . . . was a separate motion that raised new legal issues." 2012 WL

3483194, at *1.  Because the Eleventh Circuit concluded that the defendant's counsel had "sufficient time to file" the Fourth-Amendment suppression motion and "provided no explanation for why he could not have raised the Fourth Amendment challenge in his first, timely filed motion," the Eleventh Circuit held that the defendant did not show good cause to the defendant's rule 12(e) waiver of the argument.  2012 WL 3483194, at *1.

Although Rodriguez filed his Supplement to his Suppression Motion after the Court's deadline to submit suppression motions, Rodriguez' Suppression Motion argued the APD officers had violated his Fourth-Amendment rights and that he was not free to leave.  Had Rodriguez elaborated on his assertion that "[a] reasonable person in Rodriguez' position would not have felt free to terminate this encounter in light of the circumstances," in his written motion, as he did at the suppression hearing, Rodriguez could have sufficiently notified the Court that his Fourth Amendment argument extended to an unlawful arrest.  That Rodriguez' argument was regarding a Fourth-Amendment seizure distinguishes this case from United States v. Adams, where the defendant argued that the Fourth-Amendment claim included in his second motion was only an addendum to a claim to suppress rule 404(b) evidence.  Moreover, in United States v. Adams, the inquiry and the district court's analysis whether the evidence should be suppressed under the Fourth Amendment would have likely required additional briefing and an additional suppression hearing so that the parties could present arguments unrelated to suppressing the 404(b) evidence, and present additional facts unrelated to those regarding the 404(b) evidence. Whereas, in this case, whether a Fourth-Amendment seizure was an investigatory stop or escalated to an arrest revolves around the same underlying facts -- the circumstances of the APD officers' detention of Rodriguez -- and similar, although distinct, arguments.  Thus, although the arguments that Rodriguez sets forth in his Supplement "raise new legal issues" which the Court has concluded he did not raise in his

-32-

Suppression Motion, because those arguments were discussed at the Suppression Hearing, and also analyzed and decided in the Court's MOO, allowing Rodriguez to supplement his Suppression Motion does not require the Court to allow more briefing, hold a suppression hearing, or re-analyze the issue. Notably, although the Supplement raises new legal issues that were not raised in Rodriguez' written Suppression Motion, the Supplement does not raise any new legal issues that the Court did not already analyze and decide in its MOO.

Although the Court concluded that Rodriguez did not present sufficient facts and arguments about the investigatory detention escalating to a Fourth-Amendment arrest in his Suppression Motion, Rodriguez timely submitted his Suppression Motion arguing that the APD officers' questioning violated the Fourth Amendment, the specific argument that the seizure amounted to a Fourth-Amendment arrest was discussed at the Suppression Hearing, and the Court analyzed and decided the issue in its MOO. Because the Supplement raises no new legal issues for the Court to decide as Court has already analyzed whether the APD Officers' detention exceeded the scope of a permissible investigatory detention, allowing Rodriguez to supplement his Suppression Motion does not require the Court to expend additional resources -- beyond this Memorandum Opinion and Order -- to decide whether there are any new arguments which the Court must decide. The Court, therefore, will exercise its discretion in this case to accept Rodriguez' untimely Supplement to his Suppression Motion.

**IT IS ORDERED** that the Defendant Daniel Manuel Rodriguez' request in Defendant's Supplement to Motion to Suppress for Purposes of Preserving Issue, filed January 9, 2012 (Doc. 43), is granted, and the Court finds that his argument that the Albuquerque Police Department officers' investigatory detention outside of the convenience store escalated to a de facto arrest is preserved.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Kenneth J. Gonzales
   United States Attorney
Charles Barth
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

      *Attorney for the Defendant*