**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                            No. CR 11-2158 JB

DANIEL MANUEL RODRIGUEZ,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Daniel Rodriguez' Memorandum in Aid of Sentencing and Objections to Addendum to PSR, filed May 31, 2012 (Doc. 50)("Sentencing Memo."). The Court held a sentencing hearing on July 6, 2012. The primary issues are: (i) whether the Court should depart downward, because Defendant Daniel Manuel Rodriguez was diagnosed as suffering from multiple personality disorders at the time he, a convicted felon, committed the offense of possessing a firearm; and (ii) whether, because of D. Rodriguez' psychological problems, and because he asserts that he possessed a firearm only for personal protection after having been shot at while at work, the Court should vary downward on D. Rodriguez' sentence from a guidelines sentence of 41 to 51 months. The Court will grant in part and deny in part D. Rodriguez' requests. The Court will deny a departure under U.S.S.G. § 5K2.13 for diminished capacity, because D. Rodriguez' psychological problems did not contribute substantially to his commission of the offense. Based on D. Rodriguez' circumstances, the Court will vary downward on D. Rodriguez' sentence to a sentence of 30-months imprisonment to more accurately reflect the factors embodied in 18 U.S.C. § 3553(a).

**PROCEDURAL BACKGROUND**

D. Rodriguez was indicted on August 9, 2011, and charged with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2): Felon in Possession of a Firearm and Ammunition. See Indictment (Doc. 11). On December 13, 2011, D. Rodriguez entered into a Conditional Plea Agreement in which he pleaded guilty, but on condition that he reserves the right and ability to withdraw the plea should he prevail on his appeal of the Court's Memorandum and Opinion Order, filed December 8, 2011 (Doc. 35)(Dec. 8, 2011 MOO). See Doc. 40.[1] In the Conditional Plea Agreement, D. Rodriguez admitted that, having been convicted of a previous felony, he was in possession of a Smith and Wesson, model 66, .357 magnum revolver, and five rounds of ammunition for the revolver, on or around July 27, 2011. See Conditional Plea Agreement at 3-4.

The United States Probation Officer ("USPO") disclosed a Presentence Investigation Report ("PSR") on February 10, 2012. The PSR calculated the base offense level, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), at 20. See PSR ¶ 15, at 7. The PSR applied a 2-level increase to D. Rodriguez' offense level pursuant to U.S.S.G. § 2K2.1(b)(4)(A), because the Smith and Wesson revolver D. Rodriguez possessed "had been entered into the National Crime Information Center record as being stolen." PSR ¶ 16, at 7. The PSR calculated D. Rodriguez' adjusted offense level as 22. See PSR ¶ 20, at 7. The PSR applied a 2-level decrease to D. Rodriguez' offense level, pursuant to U.S.S.G. § 3E1.1(b), because D. Rodriguez demonstrated an acceptance of responsibility for the offense. See PSR ¶ 21, at 7. After the 2-level reduction for acceptance of responsibility, the PSR calculated D. Rodriguez' total offense level as 20. See PSR ¶ 23, at 7. The PSR calculated D. Rodriguez's

---

[1]D. Rodriguez reserved the right to appeal the Court's Dec. 8, 2011 MOO, in which the Court denied D. Rodriguez' Motion and Memorandum to Suppress Evidence, filed October 3, 2011 (Doc. 24). See Dec. 8, 2011 MOO at 1-2.

criminal history category to be III, based on a total of five criminal history points.  See PSR ¶ 29, at 11.  A total offense level of 20 and a criminal history category of III results in a guidelines sentence of 41 to 51 moths.

The USPO disclosed an addendum to the PSR on May 30, 2012.  The addendum notes that, on May 16, 2012, the USPO received a psychological evaluation report regarding D. Rodriguez, prepared by Dr. Moss Aubrey, Ph.D., a forensic psychologist, on May 8, 2012.  The Addendum notes that D. Rodriguez has been diagnosed with Attention Deficit/Hyperactivity Disorder.  See Addendum at 1.  The Addendum states that, based on D. Rodriguez' self-report and a review of his social history, Dr. Aubrey diagnoses D. Rodriguez with a mixed personality disorder and also with Bipolar Disorder.  See Addendum at 1.   The Addendum notes that it is Dr. Aubrey's opinion that D. Rodriguez presents a moderate-high risk of recidivism over the next few years. See Addendum at 1.  The Addendum states that the USPO considered a departure pursuant to U.S.S.G. § 5K2.13, for diminished capacity, after reviewing Dr. Aubrey's psychological report, but concludes that a downward departure is not warranted under the facts of the case, because of "a need to protect the public because the offense involved the potential for a serious threat of violence."  Addendum at 3.

On May 31, 2012, D. Rodriguez filed his Sentencing Memo.  D. Rodriguez emphasizes his "good performance" in supervised release for eleven months, but "D. Rodriguez admittedly carried a loaded firearm . . . for protection at work."  Sentencing Memo. at 2.  D. Rodriguez states that he carried the firearm at work only after being shot at by an unknown person -- which D. Rodriguez believes was solely because of his employment as a convenience store clerk.  See Sentencing Memo. at 2 ("[D. Rodriguez] only carried the firearm after being shot at by an unknown person about one week prior to his arrest . . . .").

D. Rodriguez argues that the USPO, in concluding that a downward departure because of

diminished capacity pursuant to U.S.S.G. § 5K2.13 was not warranted because the offense involved "the potential for a serious threat of violence," erred, because the USPO used a potential, rather than the actual, threat of violence.  Sentencing Memo. at 4 (quoting the Addendum to the PSR at 3-4). D. Rodriguez asserts that the Guidelines authorize a downward departure in this case, because Dr. Aubrey's report suggests that he "committed the instant offense while suffering from a significantly reduced mental capacity, which contributed substantially to the commission of the offense." Sentencing Memo. at 5.  D. Rodriguez contends that the USPO is incorrect under Tenth Circuit precedent, because the "mere possibility that a serious threat of violence could exist is not the standard contemplated by the Guidelines."  Sentencing Memo. at 5-6 (citing United States v. Ingle, 454 F.3d 1082, 1086 (10th Cir. 2006)("[T]he mere possession of a firearm by a convicted felon does not create a substantial risk that physical force will be used against the property or person of another.")).  D. Rodriguez argues that, beyond the USPO's error in concluding that the Guidelines' standard counseled against a downward departure, the other factors listed in U.S.S.G. § 5K2.13 which counsel against downward departure do not apply to this case.  See Sentencing Memo. at 6. D. Rodriguez also asserts that a downward departure is warranted pursuant to U.S.S.G. § 5K1.3, which allows a downward departure based upon "extreme psychological injury," because "a lengthy incarceration will undermine D. Rodriguez' mental and emotional conditions as stated by Dr. Aubrey."  Sentencing Memo. at 7.

In addition to his requests to depart downward, D. Rodriguez requests that the Court vary downward from the guidelines sentence of 41 to 51 months.  See Sentencing Memo. at 8.  As a basis for the variance, D. Rodriguez states that his characteristics weigh in favor of varying downward, because the Court may consider D. Rodriguez' diminished capacity and mental health condition. See Sentencing Memo. at 8-9.  D. Rodriguez argues that the factor analyzing the need for the

-4-

sentence imposed to protect the public from further crimes of the defendant, and to provide the defendant with correctional treatment in the most effective manner, also weighs in favor of a downward variance.  He contends this factor counsels for a variance because of Dr. Aubrey's opinion that simple incarceration is unlikely to exert a significant benefit upon D. Rodriguez, and that, "the longer he is housed with an antisocial element, the more at risk he will be for continued problems."  Sentencing Memo. at 9.  With regard to needing to avoid unwarranted sentencing disparities, D. Rodriguez asserts that any disparity here would not be unwarranted, because his psychological condition -- having been diagnosed with two psychological disorders -- warrants any sentencing disparity the Court's variance may create.  See Sentencing Memo. at 10-11.

On June 19, 2012, Plaintiff United States of America filed the Government's Response to Defendant Daniel D. Rodriguez' Memorandum in Aid of Sentencing and Objection to Addendum to PSR.  See Doc. 56 ("Response").  The United States argues that a downward departure is not warranted under U.S.S.G. § 5H2.13, because, "[s]adly, failure to contemplate consequences before acting is a common theme that brings many defendants into the criminal justice system."  Response at 2.  The United States asserts that the policies underlying U.S.S.G. § 5K2.13 actually weigh against any departure background, because D. Rodriguez' previous felony conviction involved a high speed car chase, and "[h]igh speed car chases by their nature show a wanton and willful disregard for human life and public safety."  Response at 3.  The United States argues that a downward departure is also not warranted under U.S.S.G. § 5K2.3, because D. Rodriguez having been under supervised release at the time he committed this federal offense for a 2007 drug trafficking charge, when he was just released in August, 2010, is evidence that, "[e]ven under the strict supervision of a U.S. Probation Officer, the defendant has demonstrated that he cannot comply with his terms of supervised release and the orders of this court by possessing a firearm" Response at 4. The United

States contends that D. Rodriguez' criminal history reflects an inability to conform his conduct to the laws' requirements, and a disregard for court orders, and any variance downward is therefore inappropriate in this case.  See Response at 4-6.  The United States, therefore, asserts that a guidelines sentence of 41 to 51 months constitutes a reasonable sentence.  See Response at 6.

The Court held a sentencing hearing on July 6, 2012.  D. Rodriguez stated that he objects to the PSR's recommendation against departing downward for diminished capacity and that the USPO did not consider a downward departure for mental and emotional conditions pursuant to U.S.S.G. § 5H2.3.  See Transcript of Hearing  at 3:7-12 (taken July 6, 2012)(Middlebrooks)("Tr.").[2]  The United States argued that, while D. Rodriguez may have been experiencing the psychological disorders at the time he committed the offense, D. Rodriguez does not qualify for a downward departure for diminished capacity under U.S.S.G. § 5K2.13, because the evidence does not show that D. Rodriguez meets both components of the test: (i) that he committed the offense while suffering from diminished capacity; and (ii) that his reduced mental capacity contributed substantially to his commission of the offense.  See Tr. at 8:9-14 (Brawley).  The United States asserted that the way in which D. Rodriguez' diagnosed psychological orders manifest themselves -- impulsive behavior and failure to contemplate consequences -- are problems from which "virtually every defendant that enters the criminal justice system" suffers.  Tr. at 8:20-9:3 (Brawley).  The Court agreed, finding that, although D. Rodriguez may have had diminished capacity at the time of the offense, the diminished capacity did not contribute substantially to the offense.  See Tr. at 11:21-12:9 (Court).

D. Rodriguez, after hearing the Court's analysis -- that his psychological conditions do not take this case out of the heartland of cases -- decided that, rather than arguing for a downward

_____

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

departure for mental and emotional capacity, because of his mental and emotional conditions, he would prefer to be placed in a detention facility which the Bureau of Prisons has identified as having an adequate treatment facility. See Tr. at 12:25-13:16 (Middlebrooks). D. Rodriguez thus withdrew his motion for a downward departure under U.S.S.G. § 5K2.3, conceding that his psychological problems during commission of the offense did not rise to the level of extreme psychological injury, but asked to preserve the issue and grounds for his request for the Court to vary downward. See Tr. at 15:13-19 (Middlebrooks).

### LAW REGARDING U.S.S.G. § 5K2.13

U.S.S.G. § 5K2.13 provides the following policy statement:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13. Application note 1 to U.S.S.G. § 5K2.13 provides that, for purposes of this policy statement, "'significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt n.1. Diminished capacity is an "encouraged" factor -- a specific factor that the Commission provided "'to aid the court by identifying some of the factors that the

Commission has not been able to take into account fully in formulating the guidelines.'"  United States v. Neal, 249 F.3d 1251, 1256 (10th Cir. 2001)(citing U.S.S.G. § 5K2.0).  In the case of an encouraged factor, "the court is authorized to depart if the applicable Guideline does not already take it into account."  United States v. Neal, 249 F.3d at 1256.  Accord United States v. Trejo-Lara, No. 07-1456, 2008 WL 2397672, at *2 (D.N.M. Jan. 30, 2008)(Browning, J.).

<u>ANALYSIS</u>

The Court will deny a departure under U.S.S.G. § 5K2.13 for diminished capacity, because D. Rodriguez' reduced mental capacity did not substantially contribute to the offense.  The Court will deny a departure under U.S.S.G. § 5H2.3, because D. Rodriguez withdrew his request for the Court to depart downward on this basis.  Because the Court believes there are a variety of mitigating factors in this case, the Court will vary downward on D. Rodriguez' sentence to a sentence of 30-months imprisonment.

**I.      THE COURT WILL DENY D. RODRIGUEZ' REQUEST FOR A DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K2.13.**

As an initial matter, the Court is not convinced that D. Rodriguez has a "significantly reduced mental capacity" as the Guidelines define that term.  There is no evidence that D. Rodriguez did not understand the significance of his behavior; he simply made a choice that his perceived safety overrode the law.  A lot of felons that deal drugs make the same decision.  Second, evidence is lacking that he could not control his conduct.  He was impulsive, but he remained rational.

In any case, for a downward departure to be warranted pursuant to U.S.S.G. § 5K2.13, the Court must not only find that the defendant suffered from significantly reduced mental capacity during the commission of the offense, but also that "the significantly reduced mental capacity contributed substantially to the commission of the offense."  U.S.S.G. § 5K2.13.  Section 5K2.13

-8-

further provides:

> [T]he court may not depart below the applicable guideline range if . . . (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence . . . [or] (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.

U.S.S.G. § 5K2.13.  In United States v. Clark, 310 F. App'x 275 (10th Cir. 2009), the United States Court of Appeals for the Tenth Circuit upheld a guidelines sentence and a district court's refusal to depart based on diminished capacity where the criminal defendant suffered from multiple personality disorders.  In upholding the sentence, the Tenth Circuit quoted the district court's reasoning in finding a downward departure unwarranted:

> Defense counsel also suggested in her questioning that defendant's mental illness contributed to his financial needs and therefore to the motivation to commit a crime. There can be little doubt that defendant's borderline intelligence, antisocial personality disorder, criminal record, dysfunctional upbringing, as well as his possible schizophrenia or schizoaffective disorder, have a deleterious impact upon his ability to meet his financial needs. But we do not believe that defendant has demonstrated a "significantly reduced mental capacity" as defined in U.S.S.G. § 5K2.13 . . . .

United States v. Clark, 310 F. App'x at 276.  In Dr. Aubrey's psychological evaluation report, he diagnoses D. Rodriguez with two psychological disorders: bipolar disorder and a mixed personality disorder.  See Addendum at 1.  Dr. Aubrey opines that D. Rodriguez' disorders manifest themselves through impulsive behavior and a failure to contemplate consequences.  See May 8, 2012 Psychological Evaluation Report by Dr. Moss Aubrey at 19.  The Court acknowledges that D. Rodriguez appears to have been suffering from both of these disorders at the time that he committed the offense and was found in possession of a Smith and Wesson, model 66, .357 magnum revolver, and five rounds of ammunition for the revolver.  D. Rodriguez represents, however, that he possessed the handgun and kept it at work for safety, only having begun to carry the weapon after

-9-

he was shot at by an unknown person a week earlier while working.  See Sentencing Memo. at 2. To begin to carry a firearm as protection only after having been shot at by an unknown person while working cuts against any psychological disorder substantially contributing to the commission of the offense, because, rather than appearing to be impulsive or imprudent behavior, such a response is rational.  Thus, while his bipolar disorder and multiple personality disorder may have had some role in his allegedly diminished capacity while committing the offense, because D. Rodriguez' reduced mental capacity did not substantially contribute to the commission of the offense, a downward departure is not warranted under U.S.S.G. § 5K2.13.

Additionally, both the nature of the offense and the D. Rodriguez' "criminal history indicates a need to incarcerate the defendant to protect the public."  U.S.S.G. § 5K2.13.  Although D. Rodriguez asserts that he was carrying the handgun for protection only after having been shot at while working, beyond it being illegal for D. Rodriguez to possess a firearm because of his status as a convicted felon, in this case D. Rodriguez was carrying a loaded firearm in a place of business that is open to the public.  The Court recognizes that "the mere possession of a firearm by a convicted felon does not create a substantial risk that physical force will be used against the property or person of another."  United States v. Ingle, 454 F.3d 1086.  While the risk of harm or violence that is manifest in possessing a firearm in a place of business open to the public did not, in this case, rise to the level of "a serious risk of violence," it nonetheless weighs against departing downward. In regards to D. Rodriguez' criminal history, in addition to some of his offenses involving violence and the history being fairly lengthy,  D. Rodriguez' last felony conviction involved a high speed car chase.  A high speed car chase is not commonplace in criminal history reports that come in front of the Court and certainly evokes concern about the need to protect the public through incarceration. Consequently, the Court does not believe that a departure under U.S.S.G. § 5K2.13 is appropriate.

Even if a departure were appropriate, the Court would use its discretion not to depart in these circumstances, because the only manifestations of D. Rodriguez' psychological problems place his situation far too similar to that of many, if not most, of the defendants the Court routinely sees. Unfortunately, the United States' prisons are filled with men who have psychological problems inhibiting their ability to appreciate the consequences before they act and who have extensive criminal history.  D. Rodriguez' case, in regards to any diminished capacity, remains within the heartland of cases that federal courts see.[3]

## II.   BECAUSE OF THE MITIGATING CIRCUMSTANCES SURROUNDING D. RODRIGUEZ' OFFENSE, THE COURT WILL DEPART DOWNWARD TO A SENTENCE OF 30-MONTHS IMPRISONMENT.

D. Rodriguez has an offense level of 20.  An offense level of 20 and a criminal history category of III results in a guideline imprisonment range of 41 to 51 months.  The Court has carefully considered the parties' arguments and the circumstances of this case.  The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that the punishment that the guidelines set forth, and that the United States contends the Court should follow in this case, is not appropriate for D. Rodriguez' offense.   The Court believes that a sentence of 30 months imprisonment, with two years of supervised release, is sufficient to reflect the seriousness of this offense.  D. Rodriguez' crime is a serious one that involves possession of a firearm in a business open to the public.  As detailed in Dr. Aubrey's Report, however, D. Rodriguez has a troubled history, various forms of trauma in his life, and some significant mental and emotional problems.

---

[3]While D. Rodriguez withdrew his request for a downward departure under U.S.S.G. § 5K2.3, the Court would deny that downward departure for substantially the same reason it is denying D. Rodriguez' request to depart downward under U.S.S.G. § 5K2.13.

The Court has identified a number of factors weighing in favor of varying downwards, including: (i) under the facts surrounding the incident, there was no violence or serious potential violence in D. Rodriguez' possession of a firearm; (ii) D. Rodriguez possessed the gun not with any malicious intent, but rather for safety and protection -- although he has been stripped of the right to do so in our society; (iii) D. Rodriguez has substantial mental health issues which, the Court believes, contributed to some diminished capacity in his commission of the offense; (iv) Dr. Aubrey's report indicates that he believes D. Rodriguez' mental health problems can improve with treatment; (v) incarceration may cause problems and actually deteriorate his mental condition, because Dr. Aubrey opines that the longer D. Rodriguez is housed with an antisocial element, the more at risk he will be for continued problems; (vi) judging by the amount and nature of letters submitted by his family members, D. Rodriguez does have a substantial support system in place to help him recover after his release; and (vii) D. Rodriguez appears to have a very good relationship with his child, which, studies have shown, can substantially reduce the probability of recidivism. Nevertheless, there are also a number of factors that counsel against a variance in D. Rodriguez' case.  The factors include: (i) the inherent danger that possession of a gun in a public place, especially by a convicted felon, presents to the public; (ii) Dr. Aubrey's report discloses a moderate-high risk of potential recidivism, placing D. Rodriguez, among defendants that have come before the Court,  within the highest potential recidivism rate the Court sees; (iii) Dr. Aubrey's report does not state that he believes this potential for recidivism can be reduced to a low risk rate; and (iv) particularly troubling for the Court is the high speed car chase which ensued when officers attempted to arrest D. Rodriguez in his previous felony conviction.

The great number of factors for a variance that D. Rodriguez' case presents, and that D. Rodriguez was carrying the firearm for his own protection after having been shot while at work,

make his case somewhat different than other felony-in-possession cases that come before the Court.
The Court has dealt with, however, many defendants who have psychological problems.  While the
Court does not believe that the circumstances which D. Rodriguez contends compelled him to
possess a firearm, or D. Rodriguez' mental problems, justify departures, because he still remains in
the heartland of cases, the Court concludes that a variance of about three offense levels is
appropriate to reflect these factors.  D. Rodriguez also seems to have substantial family ties and
support, which indicates that he has an understanding of the importance of his role in the family as
a father[4] and relative, and is a better candidate for rehabilitation than other defendants before the
Court.  Dr. Aubrey's report notes that isolation in an antisocial environment for a long period will
not help and will possibly exacerbate his psychological problems.  A shorter sentence will get him
sooner into supervised release, allowing him constant social contact and a full-time relationship with
his child.  The conditions the Court will impose as part of supervised release will help him address
his mental illnesses.

       The Court notes that D. Rodriguez asserts he possessed a firearm for personal safety and
acquired the handgun only after having been shot at by an unknown person while working.  The
Court also notes, however, that Congress foreclosed D. Rodriguez' ability to protect himself in such
a manner once he became a convicted felon.  The Court has considered the guidelines, but, in
arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.
Other conditions that the Court will require as part of supervised release will also provide D.

_____

       [4]The PSR discloses that D. Rodriguez is father to one three-year-old daughter of a previous
relationship.  See PSR ¶ 45, at 14.  D. Rodriguez reported that, before being in custody, he saw his
daughter two or three times per week at his mother's house, depending on his schedule and the
schedule of the girl's mother, Karina Rodriguez.  See PSR ¶ 45, at 14-15.  In addition, D. Rodriguez'
current girlfriend, Melissa Rodriguez, has one daughter, age eight, whom D. Rodriguez assisted in
supporting before his arrest.  See PSR ¶ 44, at 14.

Rodriguez with some needed education, training, and care to prevent these problems from reoccurring, particularly those related to his psychological problems.  This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  This 30-month sentence is still a serious sentence, which is why the Court believes the sentence reflects the seriousness of the offense and promotes respect for the law.  This variance will not create unwarranted sentencing disparities among similarly situated defendants; the variance can be justified by considering the circumstances D. Rodriguez believed compelled him to possess a handgun and D. Rodriguez' diagnoses of multiple personality disorders.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences D. Rodriguez to 30-months imprisonment.

        **IT IS ORDERED** that the requests in the Defendant Daniel Rodriguez' Memorandum in Aid of Sentencing and Objections to Addendum to PSR, filed May 31, 2012 (Doc. 50), are granted in part and denied in part.  The Court will deny Defendant Daniel Manuel Rodriguez' request for

a departure under U.S.S.G. § 5K2.13 for diminished capacity.  The Court will grant D. Rodriguez'

request for a downward variance for D. Rodriguez' advisory guidelines sentence of 41 to 51 months

to a sentence of 30-months imprisonment.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Charles Barth
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

    *Attorney for the Defendant*